UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>FMFG, Inc., a Nevada Corporation, also d/b/a American Adjustable Beds, Tranquility Adjustable Beds, and California Sleep Research; and KURT CUDDY, individually and as an officer and director of FMFG, Inc.,<br><br>    Defendants. | 03:05-CV-00711-LRH-VPC<br><br>ORDER |

Presently before the court is Defendants FMFG, Inc. and Kurt Cuddy's (collectively, "Defendants") Motion to Dismiss (# 8[1]). The United States of America has filed an opposition (# 10), and Defendants replied (# 14).

**I. Factual Background**

The United States filed this action seeking civil penalties and a permanent injunction against Defendants based on alleged violations of the Telemarketing Sales Rule, 16 C.F.R. §§ 310.1-310.9, as amended by 68 Fed. Reg. 4580, 4669 (January 29, 2003). FMFG, Inc. is a Nevada

---

[1]Refers to the court's docket number.

corporation that is involved with both telemarketing[2] and the sale of adjustable beds.  Cuddy is an officer, director, or manager of FMFG.  In its complaint, the Government alleges that "[o]n or after October 17, 2003, Defendants have called at least 900,000 telephone numbers that are on the National Do Not Call Registry."  (Compl. ¶ 19.)  The Government further alleges that "Defendants have abandoned outbound telephone calls to consumers by failing to connect the call to a representative within two (2) seconds of the consumer's completed greeting," and that "Defendants have called telephone numbers in various area codes without first paying the annual fee for access to the telephone numbers within such area codes that are included in the National Do Not Call Registry."  *Id*. ¶¶ 20, 21.

**II.  Legal Standard**

In considering "a motion to dismiss, all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party."  *Wyler Summit P'Ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted).  However, a court does not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in plaintiff's complaint.  *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

There is a strong presumption against dismissing an action for failure to state a claim.  *See Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted).  "The issue is not whether a plaintiff will ultimately prevail but whether [he or she] is entitled to offer evidence in support of the claims."  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) *overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982).  Consequently, the court should not grant a motion to dismiss "for failure to state a claim unless it appears beyond doubt that the plaintiff can

---

[2] 16 C.F.R. § 310.2 defines telemarketing as a "plan, program, or campaign which is conducted to induce the purchase of goods or services or a charitable contribution, by use of one or more telephones and which involves more than one interstate telephone call."

2

prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Hicks v. Small*, 69 F.3d 967, 969 (9th Cir. 1995).

**III. Discussion**

In 1994, Congress determined that it "should enact legislation that will offer consumers necessary protection from telemarketing deception and abuse." 15 U.S.C. § 6101. As a result, Congress directed the Federal Trade Commission ("FTC") to "prescribe rules prohibiting deceptive telemarketing acts or practices and other abusive telemarketing acts or practices." 15 U.S.C. § 6102. In response, the FTC adopted the Telemarketing Sales Rule ("TSR"), 16 C.F.R. §§ 310.1-310.9. The TSR was subsequently amended on January 29, 2003. 68 Fed. Reg. 4580 (January 29, 2003).

The TSR prohibits any seller or telemarketer from, among other things: 1) initiating an outbound telephone call to a person when that person's telephone number is on the "do-not-call" registry, maintained by the FTC, of persons who do not wish to receive such telephone calls; 2) abandoning any outbound telephone call; and 3) initiating an outbound telephone call to a person unless it has first paid the annual fee required by section 310.8(c). 16 C.F.R. §§ 310.4(b)(1)(iii)(B), 310.4(b)(1)(iv), 16 C.F.R. § 310.8.

**A. Count II**

Count II of the complaint alleges that "[i]n numerous instances . . . Defendants have abandoned, or caused others to abandon, an outbound telephone call" in violation of 15 C.F.R. §§ 310.4(b)(1)(iv), 310.4(b)(4). Pursuant to section 310.4(b)(1)(iv), "[a]n outbound telephone call is 'abandoned' . . . if a person answers it and the telemarketer does not connect the call to a sales representative within two (2) seconds of the person's completed greeting." 16 C.F.R. § 310.4(b)(1)(iv). Defendants seek dismissal of this count arguing that it lacks any specificity about when, where and how many times the calls have allegedly been abandoned. Defendants also argue that the allegations are defective for failing to allege that the number of abandoned calls exceeded three

percent or that the technology employed by Defendants was inadequate.  The Government responds by arguing that the complaint properly gives notice of the violation charged.

Rule 8(a) of the Federal Rules of Civil Procedure provides that a claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  "All that is required is that the complaint gives 'the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests.'"  *Kimes v. Stone*, 84 F.3d 1121, 1129 (9th Cir. 1996) (quoting *Datagate, Inc. v. Hewlett-Packard Co.*, 941 F.2d 864, 870 (9th Cir. 1991)). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims."  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (citations omitted).

The court has carefully examined the complaint in this case along with the relevant law and finds that the complaint adequately gives the Defendants fair notice of the claim and the ground upon which it rests.  The complaint alleges that on or after October 1, 2003, Defendants abandoned outbound telephone calls to consumers in violation of 16 C.F.R. §§ 310.4(b)(1)(iv), 310.4(b)(4). Thus, Defendants have notice of the time period when the alleged violation occurred and what regulation they allegedly violated.  Details regarding this alleged violation can be gained during discovery.

The court further finds that the complaint does not need to contain allegations that the number of abandoned calls exceeded three percent or that the technology employed by Defendants was inadequate.  16 C.F.R. § 310.4(b)(1)(4)(i) provides that "[a] seller or telemarketer will not be liable for violating 310.4(b)(1)(iv) if . . . the seller or telemarketer employs technology that ensures abandonment of no more than three (3) percent of all calls answered by a person, measured per day per calling campaign."  By alleging that Defendants violated 16 C.F.R. §§ 310.4(b)(1)(iv), the Government necessarily alleged that the calls do not fall under the exception contained in section 310.4(b)(1)(4)(i).  Furthermore, the court agrees with the Government that section 310.4(b)(1)(4)(i)

sets forth a defense as opposed to an element of section 310.4(b)(1)(iv).  At this stage of the proceedings, it is premature to determine whether Defendants actually employ technology that ensures abandonment of no more than three (3) percent of all calls answered by a person.

**B.  Count III**

Count III of the complaint alleges as follows:

> [i]n numerous instances, in connection with telemarketing, Defendants have initiated, or caused others to initiate, an outbound telephone call to a telephone number within a given area code without Defendants, either directly or through another person, first paying the required annual fee for access to the telephone numbers within that area code that are included in the National Do Not Call Registry, in violation of the TSR, 16 C.F.R. § 310.8.

(Compl. ¶ 25.)  In seeking dismissal of this count, Defendants argue that they are exempt from the registry fee requirements of 16 C.F.R. § 310.8.  In opposition, the Government argues that Defendants' attack fails for two reasons: 1) the applicability of the exemption to the facts needs to be determined after discovery; and 2) the face-to-face exemption does not apply to any of the do not call provisions of the TSR.

The TSR provides an exemption for "[t]elephone calls in which the sale of goods or services or charitable solicitation is not completed, and payment or authorization of payment is not required, until after a face-to-face sales or donation presentation by the seller or charitable organization."  16 C.F.R. § 310.6(b)(3).  The exemption does not apply, however, to the requirements of section 310.4(a)(1), (a)(7), (b), and (c).  *Id*.  Because section 310.8 does not fall outside the exception, *see id*., Defendants are correct that they cannot be liable for any calls in which the sale of goods or services is not completed, and payment or authorization of payment is not required, until after a face-to-face sales or donation presentation by the seller.

Paragraph 18 of the complaint provides, in part, "[a]s part of the telemarketing campaign, Defendants have called consumers to schedule sales presentations in the consumers' homes before the sale is completed." (Compl. ¶ 18.)  Although this paragraph indicates that some of the

1  telephone calls may be exempt from the TSR, it is not clear at this time whether all the alleged
2  phone calls fall within the exemption contained in 16 C.F.R. § 310.6(b)(3).  Whether this exception
3  will ultimately apply involves a factual question that is not appropriate in a motion to dismiss.

4        **C.  The allegations against Kurt Cuddy**

5        Defendants are seeking to dismiss the complaint with respect to Cuddy arguing that there is
6  no basis to hold Cuddy individually liable solely due to his status as a corporate officer.  In
7  response, the Government argues that the allegations against Cuddy are specific and sufficient
8  pursuant to Rule 8(a) of the Federal Rules of Civil Procedure.  Furthermore, the Government
9  argues that individuals can be held personally liable for violations of the TSR.

10        Pursuant to section 5 of the FTC Act, the FTC may file a civil action "against any person,
11  partnership, or corporation which violates any rule under this chapter respecting unfair or deceptive
12  acts or practices . . . with actual knowledge or knowledge fairly implied on the basis of objective
13  circumstances that such act is unfair or deceptive and is prohibited by such rule."  15 U.S.C. §
14  45(m)(1)(A) (emphasis added).  To hold an individual liable for violations of the FTC Act, the FTC
15  must first prove an underlying corporate violation.  *Federal Trade Commission v. World Media*
16  *Brokers*, 415 F.3d 758, 763 (7th Cir. 2005).  "Upon establishing corporate liability, the FTC is
17  obligated to demonstrate that the individual defendants either participated directly in the deceptive
18  acts or practices or had authority to control them."  *Id*. at 764 (citations omitted).  Finally, "[t]he
19  FTC must also prove that the individual defendants either knew or should have known about the
20  deceptive practices, but it is not required to prove subjective intent to defraud."  *Id*.

21        Although it is undisputed that it is possible to hold an individual liable under the TSR, *see,*
22  *e.g.*, *Federal Trade Commission v. Consumer Alliance, Inc.*, 2003 WL 22287364 (N.D. Ill. 2003),
23  Defendants argue that all the cases where an individual was held personally liable for a violation of
24  the FTC Act involved consumer fraud.  Therefore, Defendants argue the case must be dismissed as
25  there are no allegations of fraud.

26

6

1    Defendants' arguments concerning fraud fail to persuade the court. Defendants are correct
2    that the majority of cases finding individual liability of a corporate officer involved fraud or
3    deception. *See, e.g.*, *Federal Trade Commission v. Affordable Media*, 179 F.3d 1228, 1235 (9th
4    Cir. 1999); *Federal Trade Commission v. Publishing Clearing House, Inc.*, 104 F.3d 1168, 1170
5    (9th Cir. 1997). However, the court is unaware of any case, and Defendants do not cite to any case,
6    holding that an individual officer cannot be held liable for violating the FTC Act absent a showing
7    of fraud. In fact, the FTC Act authorizes the filing of a civil action for violations of any rule
8    respecting both *unfair or deceptive acts or practices*. 15 U.S.C. § 45(m)(1)(A) (emphasis added).
9    Therefore, the plain language of the statute indicates that it is possible to hold an individual liable
10   for unfair acts or practices that do not involve deception.
11   In this case, the Government has alleged various telemarketing acts that are either unfair or
12   deceptive. Congress, in directing the FTC to prescribe rules relating to telemarketing acts or
13   practices, provided that a violation of a telemarketing rule would be treated as a violation of a rule
14   under 15 U.S.C. § 57a. 15 U.S.C. § 6102(c). Section 57a gives the FTC the authority to "prescribe
15   . . . rules which define with specificity acts or practices which are unfair or deceptive acts or
16   practices in or affecting commerce (within the meaning of section 45(a)(1) of this title). . . ." 15
17   U.S.C. § 57a(a)(1)(B). Therefore, in directing the FTC to "prescribe rules prohibiting deceptive
18   telemarketing acts or practices and other abusive telemarketing acts or practices," 15 U.S.C. §
19   6102, Congress intended that those rules be enforceable as "unfair or deceptive acts of practices"
20   within the meaning of 15 U.S.C. § 45. And, as previously mentioned, the FTC act authorizes a
21   civil penalty "against any person" who violates a rule respecting unfair or deceptive acts or
22   practices. 15 U.S.C. § 45(m)(1)(A). For these reasons, the court finds that Cuddy could be held
23   individually liable for the alleged violations of the TSR.
24   Furthermore, the complaint sufficiently alleges that Cuddy, acting alone or in concert with
25   others, "has formulated, directed, controlled, or participated in the acts and practices of FMFG,
26

including the acts and practices set forth in this Complaint." (Compl. ¶ 5.) As previously mentioned, the complaint sets forth three violations of the TSR including calling numbers on the National Do Not Call Registry, abandoning calls, and failing to pay the national registry fees. The complaint further alleges that "Defendants' violations of the TSR were committed with the knowledge required by Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A)." (Compl. ¶ 28.) Therefore, the court finds that the complaint sufficiently gives Defendant fair notice of what the Government's claim is and the ground upon which it rests.

### D. Failure to Allege the Number of Violations

Defendants's last argument for dismissal seeks to dismiss the complaint for failing to list the number of violations. Although the complaint alleges that Defendants have called at least 900,000 telephone numbers on the National Do Not Call Registry, Defendants argue that the number of telephone calls made is irrelevant as liability is determined on a per-day basis. In opposition, the Government argues that how the civil penalty is calculated is not relevant to a motion to dismiss, and that the complaint sufficiently alleges violations of the TSR.

After examining the complaint in light of Rule 8(a) of the Federal Rules of Civil Procedure, the court finds that it satisfies the liberal requirements of notice pleading by giving Defendants fair notice of the claim and the grounds upon which it rests. Regardless of whether the number of violations are calculated based on the number of calls or the number of days the violation occurred, the complaint gives Defendants sufficient notice to provide a defense. The complaint alleges that "[o]n or after October 17, 2003, Defendants have called at least 900,000 telephone number that are on the National Do Not Call Registry." (Compl. ¶ 19.) Thus, the complaint identifies a time frame for the violations along with the approximate number of phone calls made to numbers that are on the Do Not Call Registry. Moreover, in the event the Government is able to show a continuing violation, the court, in determining the amount of a civil penalty, is required to consider factors other than the number of violations. 15 U.S.C. § 45(m)(1)(C). These factors include "the degree of

8

culpability, any history or prior such conduct, ability to pay, effect on ability to continue to do business, and such other matters as justice may require." *Id*.

It would be impractical to require the Government to provide dates, times, and recipients of the over 900,000 phone calls alleged in the complaint. Rather, this type of information is more appropriately obtained during discovery. Whether or not the factual circumstances surrounding the calls establishes a violation of the TSR is an issue that is more appropriately raised in a motion for summary judgment.

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss (# 8) is hereby DENIED.

IT IS SO ORDERED.

DATED this 13th day of September, 2006.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE